UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES CLYDE RIPPLE III,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C17-5736 JCC

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff, Charles Clyde Ripple III, seeks review of the denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Plaintiff contends the ALJ erred in evaluating the medical evidence and his testimony, and asks the Court to remand for payment of benefits. Dkt. 10. As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**I.     BACKGROUND**

Plaintiff is currently 50 years old, has a limited education, and has worked primarily as a roofer. Tr. 32. In May 2014, plaintiff applied for benefits, alleging disability as of April 2008. Tr. 16. Plaintiff's applications were denied initially and on reconsideration. *Id*. After the ALJ conducted a hearing in April 2015, she issued a decision finding plaintiff not disabled. Tr. 16-

34. In her decision, the ALJ reopened a prior application that plaintiff had filed April 2011, which had been denied because plaintiff failed to attend a consultative examination. Tr. 16. Consequently, the period at issue in this case begins April 2011. Tr. 16. With respect to the DIB claim only, plaintiff must establish disability on or before the date last insured of December 31, 2014. Tr. 17. Because neither party contends there was a substantial change in plaintiff's health since then, the Court addresses the entire period as a whole.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 2008.

**Step two:** Plaintiff has the following severe impairments: osteoarthritis and degenerative joint disease of the right knee, anxiety disorder, affective disorder, personality disorder, and substance addiction disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing/walking four hours and sitting six hours. He can only occasionally climb ladders, ropes, and scaffolds. He can frequently kneel, crouch, and crawl. He can only occasionally be exposed to hazards such as moving mechanical parts and unprotected heights. He is limited to simple, routine, and repetitive tasks, simple work-related decisions, occasional interaction with coworkers, and no interaction with the public.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, he is not disabled.

Tr. 19-34. The Appeals Council denied plaintiff's request for review, making the ALJ's decision

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

the Commissioner's final decision. Tr. 1.

## III. DISCUSSION

### A. Reviewing Medical Sources

Plaintiff contends the ALJ failed to either reject or fully incorporate into the RFC the limitations opined by state agency reviewing medical sources Renee Eisenhauer, Ph.D., in August 2014 and Gary L. Nelson, Ph.D., in November 2014. Dkt. 10 at 3-4. The Court agrees.

In reviewing plaintiff's claims at the initial and reconsideration level, Dr. Eisenhauer and Dr. Nelson opined that plaintiff "[w]ould do best with work that does not change frequently." Tr. 96, 108, 124, 138. The ALJ gave these opinions "great weight." Tr. 29.[3] The Commissioner argues that the RFC limiting plaintiff to "simple, routine, and repetitive tasks" accounts for the doctors' opinions. Tr. 23. However, the RFC did not set any limitation on how often these routine tasks would change. If a given day's tasks were entirely routine, but the routine changed every month or every quarter, for example, an employee would need to adapt to change monthly or quarterly. The Court concludes the ALJ erred by failing to incorporate opined limitations that she accorded great weight.

Dr. Eisenhauer and Dr. Nelson also opined that plaintiff "can understand and complete simple tasks within an average workweek the majority of the time, especially when not working closely with the public." Tr. 95, 107, 123, 137. Plaintiff seems to argue that the RFC should have limited the length of his workday or workweek, but fails to connect his argument to the doctors' opinion. Dkt. 10 at 4. The Court finds no error.

---

[3] In evaluating every opinion, one reason the ALJ gave it weight was because the opinion was "consistent with the [RFC] finding that [plaintiff] can perform unskilled work" with social limits. Tr. 29, 30, 31. This is not a reason. It is simply the ALJ agreeing with a doctor to the extent the doctor agreed with the ALJ. The Court therefore only addresses other reasons the ALJ gave.

**B.     Examining Medical Sources**

An ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996). When contradicted, an examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.*

1.     Dr. Eisenhauer

In addition to serving as a reviewing medical source, Dr. Eisenhauer examined plaintiff in July 2017 and provided opinions as an examining medical source. The ALJ accorded "some weight" to Dr. Eisenhauer's opinion that plaintiff had "moderate" limitations on several abilities, including performing activities within a schedule and maintaining regular punctual attendance, adapting to changes in a routine work setting, and completing a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 31, 501.[4] Plaintiff argues that the ALJ erred by failing to either reject the opinions or fully incorporate the limitations into the RFC. Dkt. 10 at 6. The Court agrees. The Commissioner argues that the ALJ accounted for Dr. Eisenhauer's moderate limitations by limiting plaintiff to simple, routine, repetitive work with limited social interaction. Dkt. 11 at 8.

As discussed above, the RFC does not account for difficulty in adapting to changes. Even if tasks remain routine and repetitive throughout the day, the routine may change on a monthly or quarterly basis, for example. The ALJ also did not explain whether moderate difficulties with attendance were compatible with competitive employment. At the hearing, a

---

[4] Plaintiff does not challenge the ALJ's rejection of Dr. Eisenhauer's opinion that plaintiff had "marked" limitations on his ability to maintain appropriate behavior in a work setting, and her opinions on plaintiff's physical limitations because they were beyond the scope of her expertise as a mental health professional. Tr. 501, 31, Dkt. 10 at 5-6.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

vocational expert testified that a person who missed two days per month would be unable to maintain competitive employment. The Court concludes the ALJ erred by not addressing Dr. Eisenhauer's moderate limitations.

2. <u>Randy Hurst, Psy.D.</u>

Plaintiff contends the ALJ erred in rejecting part of Dr. Hurst's opinions and failing to incorporate the rest into the RFC. Dkt. 10 at 8. The Court agrees. Dr. Hurst opined that plaintiff would need close supervision and repetition to learn. Tr. 572. He also opined that plaintiff was moderately limited in abilities to behave appropriately at work, communicate and perform effectively, adapt to changes in routine, and be aware of normal hazards and take appropriate precautions. Tr. 572-73. Dr. Hurst opined plaintiff had "mild to moderate" limitations on abilities to complete a normal workday and workweek, handle detailed instructions, and ask simple questions or request assistance. Tr. 572-73.

The ALJ gave Dr. Hurst's opinions "some weight" because they were supported by the record. Tr. 31. She gave "less weight" to his opinion that plaintiff needs close supervision to learn because it was "not supported by the record of conservative mental health treatment." Tr. 31. The ALJ did not explain the connection between conservative mental health treatment and how plaintiff learns. The Commissioner argues that the record shows that plaintiff's "mental condition was not as severe as Dr. Hurst suggested." Dkt. 11 at 9. While inconsistency with the medical record can be a reason to discount a doctor's opinions, that is not what the ALJ did. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("consistency of the medical opinion with the record as a whole" is a relevant factor in evaluating the opinion). The ALJ gave weight to all of Dr. Hurst's opinions except his opinion that plaintiff requires close supervision and repetition in order to learn. The Commissioner's argument does not explain the connection between how

plaintiff learns and "conservative" mental health treatment.  Moreover, the records the Commissioner cites show that plaintiff took psychiatric medications and underwent therapy.  Tr. 580, 583, 584.  It is not clear what further treatment the Commissioner expects for mental health conditions.  The Court concludes the ALJ did not provide a specific or legitimate reason to discount Dr. Hurst's opinion that plaintiff required close supervision and repetition to learn.

The Court concludes the ALJ also erred by failing to address how the rest of Dr. Hurst's opinions, which were not rejected, are accounted for in the RFC.  For example, as addressed above, limiting plaintiff to routine, repetitive tasks in a given day does not address a reduced ability to adapt to changes that might occur monthly or quarterly.

### 3. Wendy Hartinger, Psy.D., and Melanie Edwards Mitchell, Psy.D.

The ALJ evaluated the opinions of Dr. Hartinger and Dr. Mitchell together.  Tr. 30.  Both opined that plaintiff had "marked" limitations in maintaining appropriate behavior at work.  Tr. 622, 626.  Both opined that plaintiff had "moderate" limitations in handling detailed instructions, maintaining a schedule and attendance, learning new tasks, adapting to changes, asking questions or for assistance, communicating and performing effectively, and completing a workday and workweek.  Tr. 621-22, 626.

Plaintiff contends that the ALJ erred in rejecting the marked limitation and failing to incorporate the moderate limitations in the RFC.  Dkt. 10 at 10-12.  The Court agrees.  The ALJ gave "partial weight" to both doctors' opinions because they were consistent with the overall record.  Tr. 30.  The ALJ rejected the marked limitation on appropriate behavior as inconsistent with (1) conservative treatment, (2) unremarkable mental status examination results, and (3) ability to get along with his girlfriend and live with roommates.  Tr. 30.

As discussed above, "conservative" treatment mischaracterizes the record because

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

plaintiff took psychiatric medications and participated in therapy, and neither the ALJ or the Commissioner explains what more-aggressive treatment was warranted.

As for mental status examinations, neither the ALJ nor the Commissioner point to any to support their position. In fact, the record shows remarkable abnormalities in mental status examination results. Robert E. Schneider, Ph.D., performed extensive mental status testing, which revealed "low frustration tolerance, a tendency to react to stresses with acting out behavior, a considerable amount of anger and blaming of others and underlying sociopathic characteristics." Tr. 478. These deficits are highly relevant to the ability to maintain appropriate behavior in a work setting. Dr. Schneider also described plaintiff as "an adolescent" mentally and found deficits in concentration, memory, and information processing. Tr. 475-77. Dr. Hurst's mental status examination showed a depressed mood and abnormalities in orientation, concentration, and abstract thought. Tr. 571. Dr. Hartinger's examination showed dysphoric mood and abnormalities in concentration, fund of knowledge, and memory. Tr. 623. Treating provider Cesar P. Rafano, M.D., performed a mental status exam and reported diminished hygiene and grooming, profound psychomotor retardation, downcast affect, and concentration difficulty. Tr. 590. In sum, the ALJ's finding of unremarkable mental status examinations is not supported by substantial evidence in the record.

That plaintiff has a girlfriend and roommates is not inconsistent with the doctors' opinions that he would have marked difficulty maintaining appropriate behavior in a work setting. Plaintiff testified that his girlfriend "cooks a lot for" him and helps with his laundry. Tr. 60. He lives in a basement room and has three roommates. Tr. 45. When he got into a fistfight with a next door neighbor, one of his roommates broke up the fight. Tr. 74. None of this testimony indicates that he could behave appropriately at work for a full workday and workweek.

Coworkers would not be expected to help him if he got into a fight at work. There is no indication that plaintiff spends eight hours a day with his girlfriend or roommates. The Court concludes the ALJ did not provide a specific and legitimate reason to reject Dr. Hartinger's and Dr. Mitchell's opinions that plaintiff has marked limitations on his ability to behave appropriately at work.

The Court concludes the ALJ also erred by failing to address how the rest of the doctors' opinions, which were not rejected, are accounted for in the RFC. For example, as discussed above, limiting plaintiff to routine, repetitive tasks in a given day does not address a reduced ability to adapt to changes that might occur monthly or quarterly.

### C. Plaintiff's Testimony

Where, as here, an ALJ finds that a claimant has established underlying impairments that may reasonably be expected to cause the alleged symptoms and there is no affirmative evidence of malingering, the ALJ may reject plaintiff's testimony about the severity of his symptoms only "by offering specific, clear and convincing reasons" supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (2017).

At the April 2016 hearing, plaintiff testified that his right knee is "in pain all the time" and that several days a week he "just lay[s] in bed." Tr. 53, 63. He can "move for a little bit" but then needs to sit, and then after a while needs to get up. Tr. 63. Regarding mental health symptoms, plaintiff testified to "anger issues" and difficulty getting along with others. Tr. 54. He reported getting into two fistfights with a neighbor in the month before the hearing. Tr. 73-74.

The ALJ reasoned that, because plaintiff's mental health has improved with treatment and his compliance has been inconsistent, his mental health "would be expected to improve with

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

consistent compliance with treatment." Tr. 32. "Impairments that can be controlled effectively with [treatment] are not disabling for the purpose of determining eligibility for" Social Security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The record, however, only shows a repeating pattern of improvement and decline. Tr. 25-26. Celexa worked well for plaintiff's depression, but then stopped working and caused side effects. Tr. 442, 401. He switched to Prozac, which was initially effective but then became less so despite "good compliance." Tr. 401, 433, 400, 399. Plaintiff then tried Venlafaxine, which initially seemed effective but after a few months plaintiff reported he "still f[elt] depressed." Tr. 590, 587, 585. Similarly, trazodone initially helped him sleep, but then became less effective. Tr. 413. This history does not provide substantial evidence for the ALJ's finding that plaintiff's mental conditions would improve with consistent medication compliance. Particularly with mental health issues, symptoms may "wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The Court concludes the ALJ erred in discounting plaintiff's testimony regarding the severity of his mental health symptoms.

The ALJ discounted plaintiff's physical symptom testimony on the grounds that his abilities to garden, hike, fish, and camp were inconsistent with his allegations of disabling limitations, and showed he could perform activities "similar to those required for work." Tr. 31. In a February 2016 intake assessment, plaintiff told a provider that he "enjoys … camping, fishing, hiking and biking." Tr. 576. At the April 2016 hearing, he testified that he goes fishing. Tr. 61. Inconsistency with daily activities is a valid reason to discount a claimant's testimony.

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Hiking is inconsistent with plaintiff's testimony that he cannot stand or walk for long. Although other interpretations of the record are possible, the ALJ's is "a reasonable interpretation and is supported by substantial evidence; thus, it is not [the Court's] role to second-guess it." *Id.*

The Court concludes the ALJ did not err in discounting plaintiff's testimony on his physical symptoms.

### D. Scope of Remand

Plaintiff contends the Court should remand for payment of benefits. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.

Here, the Court finds that the record, as it stands, does not compel a finding of disability. For example, it is unclear how "moderate" limitations on plaintiff's ability to complete a workday and workweek translate into attendance. While plaintiff proposes that the Court equate the limitations with being absent at least twice a month or off task 20% of the time, the equivalency is speculative. Dkt. 10 at 6, 9, 11-12. Accordingly, remand for further proceedings is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reconsider plaintiff's testimony and the opinions of Dr. Eisenhauer, Dr. Nelson, Dr. Hurst, Dr. Hartinger and Dr. Mitchell, reassess the RFC and continue to step five as needed.

DATED this 9th day of July, 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE